**TRIUMPH HOSIERY MILLS, INC.,**
**Plaintiff,**

**v.**

**TRIUMPH INTERNATIONAL CORPO-**
**RATION and Triumph of Europe,**
**Inc., Defendants.**

United States District Court
S. D. New York.
July 18, 1960.

Lipkowitz & Plaut, New York City, I. Robert Harris, New York City, Robert Zicklin, New York City, of counsel, for plaintiff.

Brumbaugh, Free, Graves & Donohue, New York City, Granville M. Brumbaugh, Richard G. Fuller, Jr., New York City, of counsel, for defendants.

CASHIN, District Judge.

This is a motion for a preliminary injunction which would prevent the defendants from utilizing the word "Triumph" in the nature of a trademark or a trade name. The underlying complaint states claims grounded in trademark infringement, unfair competition and conspiracy, and requests permanent injunctive relief as well as an accounting for profits and damages.

The facts which I deem relevant to the motion are not in substantial dispute. Plaintiff is a manufacturer and distributor to retail outlets in the United States, Canada, Europe and Africa of women's hosiery. Plaintiff, or its predecessor in interest, has, since 1890, utilized the mark "Triumph" to identify its products. This mark was registered on April 11, 1939 for use on women's hosiery and stockings, under Registration No. 366,-415. The registration was renewed on April 11, 1959. In 1955, the stockholders of plaintiff organized another corporation, "Danskin, Inc.", which conducts the same general type of business as plaintiff throughout the same area. The products purveyed by the affiliate, however, are "women's outerwear, underwear and foundation-wear * * * which include girdles, stretchable nylon leotards, tights, trunks and panties, elastic mesh hosiery and swim suits." These products are not marketed under the trademark "Triumph" but, rather, under the trademark "Danskin". This mark plaintiff registered on January 12, 1954 for use on "women's hosiery and stockings, and for opera hose and stockings and opera tights" (Registration No. 584,683) and on March 20, 1956 for use on "women's and children's foot socks, and women's, children's and men's leotards" (Registration No. 623,525). After the affiliate "Danskin, Inc." was formed, the registrations for the mark "Danskin" were assigned to the new corporation.

The defendants are subsidiaries of Triumph Spiesshofer & Braun, a German partnership. Both are New York corporations, Triumph International Corporation being the importing and distribut-

ing subsidiary for the United States and Canada, and Triumph of Europe, Inc., being the marketing subsidiary. Defendants' parent or its predecessor have been in the business of manufacturing and selling women's foundation garments since 1886. Defendants' parent, through various subsidiaries, markets its product in Europe, Africa, the Middle and Far East and South and Central America, as well as conducting the marketing activities herein attacked. Since 1948 its sales have exceeded the equivalent of $250,-000,000. While not all of the names of the subsidiaries are listed in the papers before me, thirteen subsidiaries, apart from the defendants, utilize the word "Triumph" in their names. Defendants' parent products have also been advertised and marketed under the trademark "Triumph" in its overseas operations. Until recently, defendants' parent conducted no activities in the United States or Canada except to export small quantities to the United States through an independent American importer. In 1945, however, defendants' parent contemplated expanding into the North American market. Soon thereafter, negotiations were initiated with a view towards obtaining from plaintiff its consent to the use of the trademark "Triumph". The negotiations were, for reasons in dispute, abortive. When defendants' parent, through defendants, did commence in 1959 substantial operations in the North American market, it utilized as its trademark the term "Distinction". However, it invariably coupled the trademark with the use of the corporate name of the marketing defendant. The trademark "Distinction", however, appears in large letters and much more prominently than the corporate name. From May 1, 1960 through August 31, 1960 defendants have budgeted $75,000 for advertising. From September 1, 1959 through May 1, 1960 they have expended approximately $110,000 for advertising.

From these virtually undisputed facts it appears abundantly clear that plaintiff has not at all established the defendants are newcomers to the field who are attempting to pirate plaintiff's customers. The products purveyed by plaintiff and defendants are entirely different. The products purveyed by plaintiff's affiliate would seem to overlap to only a slight extent, if at all. Defendants do not sell an inferior product which might benefit from the superior reputation of a manufacturer of a related though noncompetitive product. Rather, defendants' merchandise appears to be, at the very least, of as high a quality as plaintiff's. Further, defendants' substantial advertising expenditures and budget negates any possible inference that they are seeking a "free ride". Rather, their utilization of the corporate name Triumph would seem reasonably inferable from a natural desire for similarity of names with their parent and other affiliated corporations and from a desire to trade on its own good will, which may well be known to the trade in this country through the activities of defendants' parent or affiliates overseas.

A finding that plaintiff has not established that defendants are seeking to appropriate to themselves the customers of plaintiff is not dispositive of the motion, however. Undisputed facts still remain which tend to favor the position of the plaintiff. These facts are that plaintiff is the owner of the trademark "Triumph"; that the customers of plaintiff's products and defendants' products are of the same class; that the products will generally be sold in the same specialized retail outlets or in the same department of large retail outlets; and that defendants can market their products under the trademark "Distinction" or some other mark, for that matter, without utilizing, in conjunction therewith, a corporate name containing the plaintiff's trademark. Under the facts before me at this point, however, I do not believe injunctive relief is warranted.

The first user of the mark does not obtain the right to enjoin anyone else from using the same or similar mark in another field. True, a literal reading of the Lanham Act would lead to a dif-

ferent conclusion, for the Act states as follows:

> " * * * the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods or services * * *."
> 15 U.S.C.A. § 1114.

In any case where the same or similar mark is used, confusion as to source could occur.

A literal reading of the Lanham Act was rejected by the Court of Appeals for this Circuit, as long ago as 1949, in the case of S. C. Johnson & Son v. Johnson, 175 F.2d 176. This rejection has been reiterated by that same Court as recently as June 13, 1960 in the case of Avon Shoe Co., Inc. v. David Crystal, Inc., 2 Cir., 279 F.2d 607, 613. It was re-emphasized therein that

> " * * * it is perfectly clear that this Court, at least, has never subscribed to such a restrictive reading of the Act as would empower a first user, solely because of his priority, to automatically enjoin the use of the mark by an innocent junior user on related goods in every case where confusion of source of origin is likely. * * * a senior user possesses but two legitimate interests which may properly call for injunctive relief against a use by a junior user on related goods, namely, that he may at some future date desire to expand his business into the related field in which the junior user is operating and that he, in any event, should be able to develop his present business free from the stain and tarnishment which may result from improper trade practices of the junior user. But against these legitimate interests of the senior user are to be weighed the legitimate interests of the innocent second user."

The first legitimate interest to be protected is clearly not present here. Plaintiff does not market goods which compete with defendants. Even if it be assumed that there is competition between plaintiff's affiliate and defendants, which has not been established by the papers, the affiliate's use of a different trademark shows that it does not desire to market under the mark "Triumph" and thus has no interest to protect. No likelihood, of future expansion into the foundation garment field under the mark in issue has been shown.

The second interest entitled to protection, the possible stain and tarnishment to plaintiff's reputation, is highly unlikely. As pointed out above, defendants purvey a quality product. No evidence whatsoever has been presented which would even give rise to a suspicion that defendants are likely to engage in any practice that will adversely affect plaintiff's reputation.

█ █ It will be noted, however, that the court in the Avon case uses the phrases "innocent junior user" and "innocent second user." In the Avon case it appeared that the defendants had adopted and exploited the mark in issue with no knowledge of the prior use by plaintiffs. However, it would appear that a second user can have knowledge of the prior use of the mark by the senior user, adopt it and still be an "innocent user." One case cited by the court in the Avon case for the general proposition being discussed, is G. B. Kent & Sons, Limited v. P. Lorillard Co., D.C.S.D.N.Y.1953, 114 F. Supp. 621, affirmed 2 Cir., 1954, 210 F.2d 953. In that case, the same mark was used on unrelated products by a junior user with full knowledge of the prior use. However, the junior user thought that there would be no possibility of confusion of source because of the vast disparity between the products. The use of the mark was held "innocent" and nonenjoinable. The distinction to be argued for on behalf of the plaintiff herein is, of course, obvious. The products purveyed by plaintiff and defendants are not vastly dissimilar, rather, they are clearly related. Nevertheless, the defendants herein might well be held equally innocent. The mark "Triumph" is a so-called

weak mark, i. e. it has been used many times to identify many types of products and services (cf. Federal Telephone & Radio Corp. v. Federal Television Corp., 2 Cir., 1950, 180 F.2d 250). There have been 207 registrations of the mark Triumph, foreign words resembling it and meaning the same, or close equivalents of it. Over 100 corporations have been incorporated in New York State or have qualified to do business therein, whose corporate names begin with the word Triumph. In the telephone directories of Manhattan, Brooklyn, Bronx, Queens, Nassau and Newark there are 23 listings of commercial entities whose names begin with "Triumph". I find no reason to doubt the statement in the affidavit of defendants' counsel that prior to adopting the corporate names he had concluded that "plaintiff's rights in the trademark 'Triumph' were limited and restricted to the hosiery field." Under these circumstances I find that defendants' use of the word "Triumph" in its corporate name is "innocent", within the meaning of the Avon case.

I have adverted previously, when discussing whether defendants were seeking a "free ride" on plaintiff's good will, to their natural desire to associate themselves by similarity of names with their parent and affiliates overseas. That natural desire is a legitimate interest of the defendants. It is, in fact, akin to the interest of the defendant in the case of S. C. Johnson & Son v. Johnson, supra, in the use of his surname. The fact that a corporate name, rather than an individual name, is being used makes such an interest no less legitimate.

I have not at all mentioned likelihood of confusion. This has not resulted from inadvertence but from the fact that, under the circumstances presented, likelihood of confusion is irrelevant. In the Avon case, the Court of Appeals held that likelihood of confusion had been established. Nevertheless, an injunction was denied. As I have pointed out above, the position of the defendants here comes squarely within the rationale of the Avon case.

Neither have I overlooked the fact that one instance of advertising of defendants' products under plaintiff's mark by a retailer has been established. This showing does call for injunctive relief since it is really only an instance of actual confusion which plaintiff must suffer. Were there any showing that defendants at all participated in the wrongful use of the mark, they would not be "innocent" junior users. No such showing, however, has been made.

 Plaintiff also makes allusion to the fact that both plaintiff and defendants use the design of a crown in their advertising and packaging of their products. A crown forms no part of plaintiff's trademark and thus is not entitled to protection. In addition, crowns are utilized so generally that protection of such a mark, even if registered, would be very narrow. The difference in the design of the crowns used by the parties is so vast that no unlawful intent on the part of defendants can be inferred.

Motion for preliminary injunction is denied.

It is so ordered.