**TRIUMPH HOSIERY MILLS, INC.,**
Plaintiff-Appellee,

v.

**TRIUMPH INTERNATIONAL CORPO-
RATION and Triumph of Europe,
Inc., Defendants-Appellants.**

No. 50, Docket 26926.

United States Court of Appeals
Second Circuit.

Argued Nov. 2, 1961.

Decided Sept. 17, 1962.

Granville M. Brumbaugh, of Brumbaugh, Free, Graves & Donohue, New York City, for defendants-appellants.

Irving D. Lipkowitz, of Lipkowitz & Plaut, New York City, for plaintiff-appellee.

Before CLARK, HINCKS and FRIENDLY, Circuit Judges.

HINCKS, Circuit Judge.

Plaintiff-appellee, Triumph Hosiery Mills, Inc., is a New York corporation which manufactures women's stockings, marketed under the registered trademark "Triumph," and opera tights, leotards, women's underwear and outerwear and girdles none of which it marketed under the "Triumph" name but instead through Danskin, Inc., a wholly-owned subsidiary, which had registered its name "Danskin" as a trade-mark for use on opera tights, leotards and hose.

Defendants-appellants, Triumph International Corporation and Triumph of Europe, Inc., are New York corporations which serve as the American distributing and marketing affiliates of Triumph Spiesshofer & Braun, a German manufacturer of women's foundation garments —brassieres, corsets, panty girdles, etc. Defendants were incorporated in 1959, and in 1960 commenced marketing in the United States their parent's products under the (unregistered) trade-mark "Distinction by Triumph of Europe."

Plaintiff brought an action under the Lanham Act, 15 U.S.C.A. § 1051 et seq., to enjoin the defendants' use of "Triumph" and moved for a preliminary injunction. Judge Cashin found that defendants' parent had long sold its product throughout the world under the name "Triumph"; that they had attempted and failed to get plaintiff's permission to use "Triumph" in the United States as early as 1954; that they had now commenced to sell their goods, through substantially the same retail channels, to the same class of purchasers served by the plaintiff.

He also found, however, that "[t]he products purveyed by plaintiff and defendants are entirely different. The products purveyed by plaintiff's affiliate [Danskin] would seem to overlap to only a slight extent, if at all." And since "defendants' merchandise appears to be, at the very least, of as high a quality as plaintiff's," they would not be riding on any "superior reputation" of the "related though noncompetitive product." 187 F. Supp. 169, 171 (S.D.N.Y.1960). Thus neither of the "two legitimate interests" of a senior user—(1) possible expansion into the related field, and (2) stain and tarnishment to his reputation—would be infringed.[1] And the defendants, he found, were "innocent" junior users within the meaning of Avon Shoe Co., Inc. v. David Crystal, Inc., 279 F.2d 607 (2d Cir. 1960), cert. denied 364 U.S. 909, 81 S.Ct. 271, 5 L.Ed.2d 224. Accordingly, he denied the plaintiff's motion for a preliminary injunction.

Five months later, plaintiff renewed its motion for a preliminary injunction on the ground of newly-discovered evidence. Judge Cashin's original finding of "innocence" had rested, at least in part, on his belief that "Triumph" had been part of the German parent's name for many years. The plaintiff's new evidence was to the effect that, although the parent German company had marketed under the trade-mark "Triumph" for the period claimed, its adoption as a corpo-

---

1. These two interests will be discussed more fully later in this opinion.

rate name was of recent origin, and that the Patent Office, before distribution in the United States had begun, had refused an application for registration of "Triumph of Europe" as a trade name. Finding that these additional facts "strip[s] them [i. e., the defendants] of the cloak of innocence," 191 F.Supp. 937 (S.D.N.Y.1961), and finding further that there was a likelihood of confusion of source between the parties' goods, Judge Cashin reversed his earlier ruling and enjoined all use by the defendants of the word "Triumph" in their advertising and labels. Their right to retain "Triumph" in their corporate names was expressly left open at the stage. It is from that order of injunction that this appeal is taken.

We hold the order erroneous. For the opinion below shows that in granting the injunction the judge was actuated by a misconception as to the law applicable to the effect of a valid, registered trademark on its use by one other than its owner on goods noncompetitive with, but related to, the goods put out by the owner.

Although, it must be confessed, it is difficult to reconcile all the decisions of this court dealing with this problem, we think the full Bench of the court would now accept the propositions set forth in the opinion in Polaroid Corporation v. Polarad Electronics Corp., 2 Cir., 287 F.2d 492 at 495 (1961), where it was said:

"Where the products are different, the prior owner's chance of success is a function of many variables: the strength of his mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, and the reciprocal of the defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers. Even this extensive catalogue does not exhaust the possibilities—the court may have to take still other variables into account. American

Law Institute, Restatement of Torts, §§ 729, 730, 731."

It will be observed that this broadly stated summary includes the two conditions—(1) the prospect that the owner will want to extend his activities into the disputed area and (2) the hazard that the owner's reputation may be tarnished by the use by another—which Judge L. Hand in his opinion in S. C. Johnson & Son v. Johnson, 2 Cir., 175 F.2d 176, cert. denied 338 U.S. 860, 70 S.Ct. 103, 94 L. Ed. 527 (1949), thought should limit the extension of a trade-mark to cover related goods under the so-called "Aunt Jemima" doctrine. See Id. 175 F.2d at 179–180 and Aunt Jemima Mills Co. v. Rigney & Co.. 247 F. 407 (2d Cir.), cert. denied 245 U.S. 672, 38 S.Ct. 222, 62 L.Ed. 540 (1918). The Polaroid summary recognizes that the reach of the trade-mark beyond its owner's present use depends upon factors which are variable and relative, none of which standing alone constitutes the sole criterion. In this, the Polaroid summary is not in conflict with the Johnson opinion. For in Johnson, Judge Hand strongly intimated that the two limiting conditions of the Aunt Jemima doctrine are in themselves not indispensable absolutes but rather relative variables. For he pointed out, 175 F.2d at 180:

"In the case of fabricated marks which have no significance, save as they denote a single source or origin of the goods to which they are attached, the first user's right may indeed go so far. The second user can then show no interest of his own; and if, as will then appear, his only purpose is to trade on the first user's goodwill, it is indeed time to intervene."

His opinions in Yale Electric Corp. v. Robertson, 2 Cir., 26 F.2d 972 (1928), and L. E. Waterman Co. v. Gordon, 2 Cir., 72 F.2d 272 (1934), both of which were referred to without disparagement in a footnote to the Johnson opinion, had emphasized the variable and relative character of the pertinent factors. The same flexible concept was clearly expressed in

our decision in Durable Toy & Novelty Corp. v. J. Chein & Co., 2 Cir., 133 F.2d 853, cert. denied 320 U.S. 211, 63 S.Ct. 1447, 87 L.Ed. 1849 (1943), also authored by Judge Hand; and in a long line of subsequent cases too numerous to cite.

We agree that it would not necessarily be fatal to the grant of an injunction that neither of the two "Aunt Jemima" conditions existed. But we think it was erroneous to hold (1) that the facts relating to the defendants' use of their trademark in this country was such as to strip them "of their cloak of innocence" within the meaning of our decisions in the Johnson and Avon Shoe cases, supra, and (2) that the effect of this absence of innocence on the part of the defendants of itself was enough to entitle the plaintiff to exclusive use of its trade-mark on goods other than those on which the plaintiff had used the trade-mark.

■ First. An "innocent" or a bona fide junior user, in the sense of Johnson and Avon Shoe, is one, we think, whose use is not attributable to intent to obtain a free ride on the reputation of the owner of the trade-mark. Only one without such an intent is in position to contend that the resulting confusion as to the source of the goods, which is the statutory touchstone, will be too slight to bring the case above the rule of *de minimis*. And that apart, it may be doubted that the facts found below supported a conclusion of "non-innocence" in the sense that the defendants, in using the word Triumph in their Distinction trade-mark, did so without honest belief that their conduct was non-tortious. For the defendants' knowledge that the plaintiff was entitled to exclusive use of the Triumph trade-mark on hosiery, did not necessarily mean that they knew that, notwithstanding their use of "Triumph"

abroad, the courts would exclude them from the use of their mark, "Distinction by Triumph of Europe," on their girdles, etc. From the bare fact that the Patent Office had refused the defendants' application for registration of "Triumph of Europe," it did not follow that the defendants could not have honestly believed that on a weighing of all the relative and variable pertinent factors a court of competent jurisdiction would not permit them to use the trade-mark "Distinction by Triumph of Europe" on goods which they had long sold abroad under the Triumph trade name. Surely, error of an alleged infringer of a trade-mark, or indeed of a patent, in forecasting the decision of the ultimate arbiter, is not a species of bad faith which constitutes independent and substantive proof of infringement.

■ Second. Even if the judge below was right in finding that the defendants were not "innocent junior users" it was erroneous to hold that this fact of itself justified the injunction. Yet that, quite plainly, was his holding. He discusses and reverses in his second opinion only the "vital finding in my first opinion * * * that the defendants are 'innocent' junior users of the word 'Triumph' in their corporate names." He neither discusses nor modifies any of the other findings contained in his first opinion. Notably he leaves unimpugned his earlier comment and finding on the weakness of the plaintiff's mark.[2] Cf. France Milling Co., Inc. v. Washburn-Crosby Co., 2 Cir., 7 F.2d 304. He notes that, even in the record as enlarged for the rehearing, there was "very little evidence of actual confusion by consumers or in the trade." He does not modify the observation in his first opinion that the defendants in all their extensive advertising used the

2. "The mark 'Triumph' is a so-called weak mark, i. e. it has been used many times to identify many types of products and services (cf. Federal Telephone & Radio Corp. v. Federal Television Corp., 2 Cir. 1950, 180 F.2d 250). There have been 207 registrations of the mark Triumph, foreign words resembling it and meaning the same, or close equivalents of it. Over 100 corporations have been incorporated in New York State or have qualified to do business therein, whose corporate names begin with the word Triumph. In the telephone directories of Manhattan, Brooklyn, Bronx, Queens, Nassau and Newark there are 23 listings of commercial entities whose names begin with 'Triumph' ". 187 F.Supp. at 173.

trade-mark "Distinction by Triumph of Europe" with the word "Distinction" in large letters and much more prominent than the word "Triumph."

■ The confusion, which, after all, under the Lanham Act is the basic touchstone for injunctive relief, the judge below finds only by inference from the use of the "Distinction" mark on "closely related goods likely to be sold in the same specialized retail outlets or in the same department of large retail outlets." Such confusion, indeed, is a factor to consider. But ·it is not ·conclusive, as our earlier cases show. Merely because that factor in the Avon Shoe case, in which the trade-mark was a strong one, was recognized as a cumulative factor tending along with other factors to support a refusal of injunction, a finding of non-innocence by itself is not ground for granting an injunction in this case in which the trade-mark is, as the judge found, an exceedingly weak one. Thus to apply the doctrine of Avon Shoe involves a *nonsequitur*. It runs contrary to the summary of the applicable law in the Polaroid case which recognizes that no single factor may be taken as determinative and that all the pertinent factors must be considered.

■ The plaintiff also argues that the conduct of the defendants' parent corporation in vigorously enforcing its rights abroad in the Triumph name against American competitors somehow precludes it from all use of the name in this country. Neither in the Lanham Act nor in the common law do we find any basis for this contention.

■■ Ordinarily, when the grant of a preliminary injunction is reversed, the case goes back to the trial court for plenary trial at which the plaintiff may offer enlarged proofs. But here on the plaintiff's motion to reopen the plaintiff was afforded unrestricted opportunity to furnish additional proofs and has availed itself fully of this opportunity. But even on the enlarged record we are satisfied that the plaintiff has no case under the Lanham Act or the common law of unfair competition. It seems to us not sensible to remand for trial and thus to give the plaintiff a third bite at its cherry. Cf. France Milling Co., Inc. v. Washburn-Crosby Co., supra. It is accordingly ordered that the case be

Reversed with an order for dismissal.