**WASHINGTON NATIONAL
INSURANCE COMPANY,**
Plaintiff,

v.

**BLUE CROSS AND BLUE SHIELD
UNITED OF WISCONSIN,**
Defendant.

No. 89 C 0056.

United States District Court,
N.D. Illinois, E.D.

Jan. 3, 1990.

Irwin C. Alter, Alter and Weiss, Chicago, Ill., Geri Gaughan, Washington Nat. Ins. Co. Evanston, Ill., for plaintiff.

Laurel Barnes, Blue Cross and Blue Shield United of Wisconsin, Milwaukee, Wis., Joseph Krieger, Mason, Kolehmainen, Rathburn & Wyss, Chicago, Ill., for defendant.

## ORDER

BUA, District Judge.

After defendant accused plaintiff of service mark infringement, plaintiff commenced this action seeking a declaratory judgment of non-infringement. On November 29–30, 1989, this court held a bench trial regarding the parties' rights to their respective service marks. Based on the evidence presented at trial, the court makes the following findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

## FINDINGS OF FACT

1. Plaintiff Washington National Insurance Company ("Washington") is an Illinois corporation which is licensed to do business in 48 states. (Stipulated Fact ("SF") 1, Tr. 35.) Defendant Blue Cross and Blue Shield United of Wisconsin ("Blue Cross") operates exclusively in Wisconsin, its place of incorporation. (SF 2, 13.)

2. Both companies offer managed care programs as part of their health insurance plans. (Tr. 22, Defendant's Exhibit ("DX") 2–8.) By providing information concerning available health care services and alternatives, these programs provide the insured with greater involvement in selecting the type of care that he will be receiving. (Plaintiff's Exhibit ("PX") 1, 2, DX 2, Tr. 23.)

3. Blue Cross began promoting its own managed care program in late 1985. (Tr. 126.) In connection with this program, Blue Cross adopted THE ADVANTAGE PROGRAM as its service mark. (DX 2.) On January 8, 1986, Blue Cross registered the service mark with the Wisconsin Secretary of State. (DX 100.)

4. Washington also made its managed care program available in 1985. (Tr. 42.) Prior to marketing this program, Washington conducted a search of federally registered trademarks, which turned up no evidence of Blue Cross' state registration. (Tr. 25, PX CC.) In late 1986, without any knowledge of Blue Cross' claim to THE ADVANTAGE PROGRAM, Washington began marketing its managed care program under the service marks AdvantEDGE and WASHINGTON NATIONAL HEALTH CARE ADVANTAGE. (Tr. 44, 53.) Washington subsequently registered both service marks with the United States Patent and Trademark Office ("PTO"). (Tr. 52, PX U, UU.)

5. Washington promotes its program nationally, placing advertisements in several publications which are circulated across the country. (Tr. 31–34.) Although Washington advertises in Wisconsin, it does very little business in that state. (Tr. 43–44.)

6. In contrast to Washington's method of promotion, Blue Cross does not advertise its managed care program through the media. (Tr. 20.) Blue Cross distributes its promotional literature only in Wisconsin. (Tr. 91–97, SF 13.)

7. In 1988, Blue Cross discovered that Washington was advertising in Wisconsin. (SF 7.) Claiming that Washington's advertising campaign is likely to cause confusion among consumers, Blue Cross demanded that Washington cease promoting its insur-

ance as AdvantEDGE and WASHINGTON NATIONAL HEALTH CARE ADVANTAGE. (SF 7, 9, 11.)

8. Aside from Blue Cross' objections, Washington has not received any complaints or reports of confusion as to the source of the parties' respective insurance plans. (Tr. 35, 48.)

9. To the extent that any of the foregoing findings of fact are deemed conclusions of law, they are hereby adopted as conclusions of law.

## CONCLUSIONS OF LAW

1. As with any claim for service mark[1] infringement, the central issue is whether the mark is entitled to protection. *American Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 10 (5th Cir.1974). For the service mark to be accorded protection, it must satisfy the same legal standards applicable to trademarks. *Telemed Corp. v. Tel–Med, Inc.*, 588 F.2d 213, 216 (7th Cir.1978). Accordingly, Washington cannot be held liable for service mark infringement unless its use of the term ADVANTAGE is likely to mislead or confuse "an appreciable number of ordinarily prudent purchasers." *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir.1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979).[2]

2. In assessing the likelihood of confusion, the following factors are relevant: [T]he degree of similarity between the marks in appearance and suggestion; the similarity of the products for which the name is used; the area and manner of concurrent use; the degree of care likely to be exercised by consumers; the strength of the complainant's mark; actual confusion; and an intent on the part of the alleged infringer to palm off his products as those of another.

---

**1.** The Lanham Act defines a service mark as "a mark used in the sale or advertising of services to identify the services of one person and distinguish them from the services of others." 15 U.S.C. § 1127 (1982).

**2.** Washington also seeks a declaratory judgment that its advertising is free from unfair competition. Unfair competition and service mark in-

*Helene Curtis Indus. v. Church & Dwight Co.*, 560 F.2d 1325, 1330 (7th Cir.1977), *cert. denied*, 434 U.S. 1070, 98 S.Ct. 1252, 55 L.Ed.2d 772 (1978) (quoting *Carl Zeiss Stiftung v. VEB Carl Zeiss Jena*, 433 F.2d 686, 705 (2d Cir.1970), *cert. denied*, 403 U.S. 905, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971)).

3. Applying these factors to the instant case, the court finds no likelihood of confusion. Washington's service marks are shown below:

(PX 7.)

## Washington National Health Care Advantage℠

(PX 1.)

Blue Cross uses the following service mark:

$$\text{THE ADVANTAGE PROGRAM}$$

(DX 2.)

As the service marks appear on the parties' promotional material, there is no significant degree of similarity. Admittedly, the service marks are similar to the extent that both companies use the term ADVANTAGE. But the similarity ends there. While Blue Cross advertises THE ADVANTAGE PROGRAM, Washington's insurance program is identified simply as AdvantEDGE. Washington's other service mark—WASHINGTON NATIONAL HEALTH CARE ADVANTAGE—unequivocally identifies the source of the insurance. The size, style, and color of the print varies, making each company's mark easily distinguishable. *Cf. Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway*

---

fringement are based on the same test: likelihood of confusion. *McDonald's Corp. v. Gunvill*, 441 F.Supp. 71, 75 (N.D.Ill.1977), *aff'd*, 622 F.2d 592 (7th Cir.1980). Because the same set of facts will support a claim for unfair competition and service mark infringement, both claims will be considered together. *See id.*

& Sons, 523 F.2d 1331, 1339 (2d Cir.1975) (appropriate to consider differences in the typefaces of the marks).

4. Besides the obvious dissimilarity in visual appearance and design, the advertisements of both parties prominently feature their company name and logo. (PX 1–25, DX 1–8.) The fact that the company name is always used in connection with the service mark warrants serious consideration. See McGregor–Doniger Inc., v. Drizzle Inc., 599 F.2d 1126, 1134 (2d Cir.1979). After all, the focus is on the purchaser's impression as to the source of the product. Stix Prods., Inc. v. United Merchants & Mfrs., Inc., 295 F.Supp. 479, 494 (S.D.N.Y. 1968). If the source of the advertising is identified, then confusion will be minimized—even if the marks are used in connection with the same type of product. In the instant case, both sides testified to the fact that all of their policies and promotional material identify the company name. (Tr. 14, 27, 48, 66, 67, 98.) As a consequence, it is unlikely that an "appreciable number" of consumers would conclude that the parties' insurance programs originate from the same source.

5. Moreover, the area of concurrent use will not foster confusion. Neither party has significantly encroached upon the other's geographic area of use. Blue Cross operates exclusively in Wisconsin and controls a large share of Wisconsin's health insurance market. (SF 13, DX 30, Tr. 104.) It does not promote its managed care program outside of Wisconsin. (SF 13, Tr. 97.)[3] Washington, on the other hand, conducts only a small percentage of its business in Wisconsin. (Tr. 43–44.) It does most of its business in southern states such as Arizona, Louisiana, Texas, and Florida. (Tr. 42–43, 51.) Thus, both companies have developed their customer base and good will in segments of the country which are sufficiently distinct to permit concurrent use.[4]

6. Although Washington employs a national advertising campaign which touches upon the Wisconsin market, the breadth of its advertising takes on less significance in view of the degree of care likely to be exercised by prospective purchasers. Indeed, the level of attention a consumer will devote to examining a particular product and determining its source is an important factor bearing on the likelihood of confusion. McGregor–Doniger Inc., 599 F.2d at 1137. Generally, a consumer will exercise greater care when purchasing a valuable good or service, such as health insurance. See id. Since "managed care" is essentially a group insurance product, the market for such programs is composed largely of well-informed and sophisticated purchasers. (Tr. 49–50.) A company seeking an insurance plan for its employees, for example, will typically solicit proposals, carefully review and compare the benefits offered by each insurance carrier, and then make a selection with the advice of a brokerage firm or consultant. (Tr. 37, 49.) Such a detailed selection process, which could last several months, presents little opportunity for confusion.

7. The next factor relevant to determining likelihood of confusion is the "strength" of the service mark. Helene Curtis Indus., 560 F.2d at 1330. The strength of a mark pertains to "the distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under

---

3. In fact, a great deal of Blue Cross' promotional material is disseminated to its existing customers. (Tr. 94–95, 98–99.)

4. An additional factor the court may consider in determining the appropriateness of concurrent use is the expense incurred by the complainant in advertising and promoting its products. Carl Zeiss Stiftung, 433 F.2d at 705 n. 35; Stork Restaurant, Inc. v. Sahati, 166 F.2d 348, 356 (9th Cir.1948). Blue Cross claims to have expended at least $155,000 since the inception of its managed care program. (Tr. 96.) As Washington points out, however, that figure represents Blue Cross' expenditures for several insurance programs marketed in connection with its managed care program. (Tr. 98.) Moreover, Blue Cross has been advertising its managed care program for only four years. (Tr. 126.) It does not advertise on television, radio, in magazines, newspapers, or in any other form of print media. (Tr. 20.) While the expenses incurred by Blue Cross in publicizing its program are not insignificant, they certainly are not substantial enough to justify an exclusive right of use to the term ADVANTAGE.

the mark as emanating from a particular, although possibly anonymous, source." *McGregor–Doniger Inc.*, 599 F.2d at 1131. The strength of the mark determines the extent to which it will be protected. *Id.* Trademarks are generally classified in four categories, based on their degree of strength: (1) generic; (2) merely descriptive; (3) suggestive; and (4) arbitrary or fanciful. *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 79 (7th Cir.1977), *cert. denied*, 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978). A generic term can never become a valid trademark. *Id.* Arbitrary or fanciful terms, in contrast, are fully protected. *Henri's Food Prods. Co. v. Tasty Snacks, Inc.*, 817 F.2d 1303, 1305 (7th Cir.1987). In between these two extremes lies the merely descriptive and the suggestive terms. A merely descriptive term specifically describes the qualities or characteristics of the product and is entitled to protection only if it has acquired a "secondary meaning." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985); *Telemed Corp.*, 588 F.2d at 217. If the term merely suggests rather than describes a characteristic of the good or service, and requires the purchaser to use some degree of imagination, thought, or perception to determine the nature of the good or service, then it is a suggestive term. *Telemed Corp.*, 588 F.2d at 217.

8. Washington claims that the word ADVANTAGE, meaning "benefit" or "superior," is merely descriptive of the health insurance programs offered by the parties. Blue Cross argues that ADVANTAGE suggests rather than describes the qualities of a managed care program and, therefore, it is a suggestive term. Although the line between descriptive and suggestive terms is often difficult to draw, this court agrees

with Blue Cross that ADVANTAGE is suggestive. ADVANTAGE does not describe a basic characteristic or feature of the parties' managed care programs. Rather, the consumer is required to use some thought and perception to determine the true value of the insurance. *See Ashe v. Pepsico, Inc.*, 205 U.S.P.Q. (BNA) 451, 455 (S.D.N.Y. 1979) (used in connection with tennis equipment, the mark ADVANTAGE is suggestive, not descriptive).[5]

9. Even though ADVANTAGE is suggestive, and may be afforded protection without proof of a secondary meaning, Washington's use of that term is not likely to cause confusion. ADVANTAGE lacks distinctiveness and is inherently weak. *Id.* at 456. It is a commonly used word that "is simply lacking in originality and uniqueness." *Id.* Washington presented evidence demonstrating that several businesses in the insurance and financial services industry use the term ADVANTAGE in connection with their trademarks. (Tr. 55–60.)[6] The fact that ADVANTAGE is used so extensively by other companies to identify their products is reflective of the mark's weakness. *See Union Carbide Corp. v. Ever–Ready Inc.*, 531 F.2d 366, 382 (7th Cir.), *cert. denied*, 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976) ("A distinctive mark or name will be more broadly protected than words, such as 'ever ready,' which have been registered and applied to a variety of products."); *Triumph Hosiery Mills, Inc. v. Triumph Int'l Corp.*, 308 F.2d 196, 199 n. 2 (2d Cir.1962) ("The mark 'Triumph' is a so-called weak mark, i.e. it has been used many times to identify many types of products and services."). Quite simply, THE ADVANTAGE PROGRAM is not distinctive enough to be entitled to protection.

---

5. Furthermore, the PTO's decision to register Washington's service marks without proof of a secondary meaning raises a rebuttable presumption that the mark is not merely descriptive. *McGregor–Doniger Inc.*, 599 F.2d at 1132.

6. The following trademarks have been registered with the PTO: ADVANTAGE INVESTMENT SERVICE (PX PP.); ADVANTAGE PLUS (PX QQ.); FIRST ADVANTAGE (PX OO.); FLEX ADVANTAGE (PX LL.); PAINE WEBBER ADVANTAGE ANNUITY (PX MM.); SECURE ADVANTAGE (PX NN.); and SENIOR ADVANTAGE PLUS (PX KK.). In addition, other companies have applied the following names to their insurance products: HEALTHCARE ADVANTAGE (PX TT.); MEMBERADVANTAGE (PX II.); and THE LEADING EDGE ADVANTAGE (PX JJ.).

10. It is also worth noting that the record is devoid of any evidence of actual confusion. Washington's director of marketing for group insurance and a cost containment specialist in group marketing both testified that they did not know of one single instance of actual confusion. (Tr. 35, 48.) Although proof of actual confusion is not necessary to establish likelihood of confusion, *Helene Curtis Indus.*, 560 F.2d at 1330, the absence of confusion deserves some attention. *McGregor–Doniger Inc.*, 599 F.2d at 1136. "[I]t is certainly proper for the trial judge to infer from the absence of actual confusion that there was also no likelihood of confusion." *Affiliated Hosp. Prods, Inc. v. Merdel Game Mfg. Co.*, 513 F.2d 1183, 1188 (2d Cir.1975).

11. The final consideration is "an intent on the part of the alleged infringer to palm off his products as those of another." *Helene Curtis Indus.*, 560 F.2d at 1330. Based on the evidence adduced at trial, the court finds no such intent on the part of Washington. On July 25, 1986, prior to the time it began advertising its managed care program, Washington conducted a trademark search which turned up no evidence of Blue Cross' claim to THE ADVANTAGE PROGRAM. (Tr. 25–26, PX CC.) In fact, the search revealed that the term ADVANTAGE is used by a variety of organizations in the insurance industry. (PX CC.) Furthermore, Washington has not expressed a desire to significantly expand upon its limited presence in Blue Cross' Wisconsin market. Nothing in the record suggests that Washington adopted its mark in an attempt to capitalize on the good will of Blue Cross. Even Blue Cross admits that Washington's service marks were adopted "innocently ... without any knowledge of Blue Cross'

claim to 'Advantage' or 'The Advantage Program'." (Tr. 44.) [7]

12. Washington's substantial interest in maintaining the good will that it has acquired through its national advertising campaign outweighs any injury that Blue Cross could conceivably sustain. Since there is no likelihood of confusion, Blue Cross' reputation cannot be damaged in any way. *See McGregor–Doniger Inc.*, 599 F.2d at 1139. Moreover, there is no apparent public injury. This court, therefore, sees no reason why Washington should not be permitted to continue advertising its managed care program as it has in the past.[8]

13. To the extent that any of the foregoing conclusions of law are deemed findings of fact, they are hereby adopted as findings of fact.

## CONCLUSION

Based on the foregoing findings of fact and conclusions of law, the court renders judgment in favor of plaintiff. Plaintiff is not guilty of service mark infringement or unfair competition.

IT IS SO ORDERED.

7. Blue Cross urges the court to take judicial notice of a trademark search that it conducted on the date of trial. (Tr. 131–32, DX 100.) Since the parties stipulated to Washington's good faith at the time of adopting its service marks, this search report will not be considered on the issue of Washington's intent.

8. Relying on this court's prior decision in *V & V Food Prods., Inc. v. Cacique Cheese Co.*, 683 F.Supp. 662 (N.D.Ill.1988), Blue Cross argues that its prior Wisconsin registration of THE ADVANTAGE PROGRAM entitles it to an exclu-

sive right of use. That case, however, is inapplicable. In *V & V Food Prods., Inc.*, the parties stipulated that the trademarks at issue were confusingly similar. *Id.* at 665 n. 1. Consequently, the court had to determine the extent of their rights to specific geographic markets. *Id.* at 667. In the case at bar, likelihood of confusion is the central issue. Because the court finds no likelihood of confusion, both parties may use their respective service marks in commerce concurrently.