The W. E. BASSETT COMPANY, Plaintiff-Appellee,

v.

REVLON, INC., Defendant-Appellant.

No. 228, Docket 30159.

United States Court of Appeals Second Circuit.

Argued Dec. 6, 1965.

Decided Jan. 3, 1966.

Clifton Cooper, New York City (Stewart W. Richards and Roy C. Hopgood, Beer, Richards & Haller, New York City, on the brief), for plaintiff-appellee.

Leon Singer, New York City (Alfred K. Kestenbaum and W. Lee Helms, Blumberg, Singer, Ross & Gordon, New York City, on the brief), for defendant-appellant.

Before LUMBARD, Chief Judge, and FRIENDLY and SMITH, Circuit Judges.

LUMBARD, Chief Judge:

Revlon, Inc., defendant below, appeals from an order of the United States District Court for the Southern District of New York preliminarily enjoining Revlon from using the name "Cuti-Trim" or the plaintiff's trademark "Trim" in the advertising or sale of manicuring implements. Revlon urges that the trial judge's findings of fact and conclusions of law are clearly erroneous and that the preliminary injunction was improvidently granted. The injunction is modified and, as modified, the order is affirmed.

The plaintiff, W. E. Bassett Company, is a leading manufacturer of manicuring implements. Its products are sold under its basic trademark "Trim" and under a number of other trademarks derived from the word trim (e. g., "Trim-clip"). Bassett has sold its products under these registered marks since it began operations in 1947; its advertising expenditures have been substantial, totaling over $1,100,000 since 1954. Bassett's implements include fingernail and toenail clippers, nail files, emery boards, and a cuticle scissors which is manufactured in Germany and sold in a manicure kit named "Treasure Chest by Trim."

Revlon is a well-known manufacturer of beauty care and other products including a full line of cosmetics and manicuring articles. Its entire line of products is sold under its trademark and name "Revlon." In the manicure implement field, Bassett and Revlon are direct competitors.[1] In or about January 1965, Revlon first placed on the market in a substantial way a new manicuring device consisting of a cuticle pusher and trimmer. Revlon designated this item "Cuti-Trim" and has sold it in packages containing multiple manicure items and in cellophane tubes or "bubble packs" bearing the legend "Revlon Cuti-Trim."[2]

On June 4, 1965, Bassett instituted this action for trademark infringement and unfair competition, claiming violations of the Lanham Trademark Act of 1946, 15 U.S.C. § 1051 et seq., and the laws of New York. In the complaint, Bassett sought inter alia, a permanent injunction against further use by Revlon of the mark "Cuti-Trim." On August 19, 1965, Bassett moved for a preliminary injunction.

On November 19, 1965, after submission of affidavits and oral argument on the motion, Judge Palmieri issued an order enjoining Revlon pendente lite "from any further use of 'Cuti-Trim' or any other mark similar thereto, or to plaintiff's trademark 'Trim,' in the advertising or sale of manicuring implements, or goods of the same general class." Judge Palmieri in part denied defendant's motion to stay the preliminary injunction until appeal could be taken under 28 U.S.C. § 1292(a) (1). That motion was renewed before this court, and we stayed the injunction pending our decision.

1. A sampling by Bassett of 21,000 food stores throughout the United States indicated that sales of Revlon manicure implements accounted for approximately 30% of the market and that Bassett's percentage was approximately 25%.

2. On or about May 15, 1964, Revlon filed trademark application, Serial No. 193,581, in the U. S. Patent Office in an attempt to register "Cuti-Trim" as a

trademark. On August 27, 1964, the Patent Office made a preliminary rejection of this application on the grounds that "Cuti-Trim," as applied to Revlon's goods, so resembled plaintiff's trademark "Trim" as to be likely to cause confusion, mistake or deception. Revlon has filed an amendment to its application which is still pending before the Patent Office.

Judge Palmieri's memorandum opinion made detailed findings of fact, many of which are challenged by Revlon. He found that Bassett's "Trim" mark was valid and that it had acquired secondary meaning through its exclusive and heavily advertised use over the course of 18 years. He also found that Revlon adopted the mark "Cuti-Trim" with full knowledge of Bassett's trademark rights and in disregard of the confusion and deception the "Cuti-Trim" mark would cause to the purchasing public and to consumers. Concluding that there was reasonable cause to believe that Revlon had infringed and was infringing Bassett's "Trim" mark to the irreparable injury of the plaintiff, Judge Palmieri granted the preliminary injunction.

On this appeal, Revlon's chief contention is that Bassett's "Trim" mark is a common generic term when applied to manicuring implements and therefore that, as a "weak" mark, it is entitled to protection, if at all, only on specific products manufactured and sold by Bassett. Revlon argues that, since Bassett does not manufacture a cuticle trimmer and since no instances of actual confusion between plaintiff's and defendant's products were shown, the grant of a preliminary injunction was improper. In addition, Revlon contends that the equities favor denial of the preliminary injunction because there was inadequate evidence of irreparable injury to the plaintiff and there was "ample proof" of immediate harm to the defendant if such an injunction should issue.

■ We have made it clear that, despite the wide discretion accorded the trial court with respect to preliminary injunctions, their grant or denial is subject to meaningful appellate review. See Carroll v. American Federation of Musicians, 295 F.2d 484, 488 (2 Cir. 1961). A critical factor in the granting of such an injunction against an alleged trademark infringer is whether it is reasonably probable that the plaintiff will prevail after trial. This involves assessing the likelihood that the plaintiff's mark is valid, is worthy of protection, and is being infringed by the defendant. See, e. g., Triumph Hosiery Mills, Inc. v. Triumph Internat'l Corp., 308 F.2d 196 (2 Cir. 1962).

■ We conclude that Bassett's "Trim" is a weak mark; as applied to manicuring implements, it is primarily a term that is descriptive of the function performed by the products so marked rather than the origin of those products. The purpose of the trademark laws is to protect the public from the confusion and deception which flows from the copying of marks which, through their distinctiveness or exclusivity of use, identify the origin of the marked products. Marks descriptive of a product seldom perform this function. Moreover, since there are only so many words that can accurately describe a type of product, the law does not favor trademark monopolization of such descriptive terms. See 15 U.S.C. § 1052(e). Consequently, a mark that is merely descriptive of a class of products will receive no protection against infringement unless it has acquired "secondary meaning," i. e., unless the "primary significance of the term in the minds of the consuming public is not the product but the producer." Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 118, 59 S.Ct. 109, 113, 83 L.Ed. 73 (1938). See Safeway Stores, Inc. v. Safeway Properties, Inc., 307 F.2d 495 (2 Cir. 1962).

■ Whether a descriptive mark has acquired secondary meaning depends upon the facts of each case. Here, we find that Judge Palmieri had ample grounds for concluding that Bassett's "Trim" mark has in all probability acquired secondary meaning. The affidavits reveal that Bassett has used the "Trim" and related registered marks since 1947 and has attempted, through substantial advertising, to identify its products with this mark in the eyes of the public. Although the word trim is no doubt used in many brand and business names, there is no evidence that Bassett has permitted competitors to dilute its exclusive use of "Trim" in the manicure implement field.

■ Revlon places much emphasis on the fact that Bassett produces no cuticle trimmer at this time. However, Bassett and Revlon are in direct competition in the manicure field; moreover, they use the same channels of trade, primarily drug and department stores. Bassett's exclusive use of the "Trim" mark has embraced a broad line of manicure implements. Having shown a propensity to market new products under its "Trim" and related marks, and having established secondary meaning as to these marks, Bassett should not be hindered in its likely endeavor to market a cuticle trimmer under the "Trim" mark because Revlon has previously established an identity with that mark as to this item. If Revlon markets a new manicure product, we think it is required to choose a mark that will not hinder Bassett in later competing under its "Trim" mark and that will not confuse the public as to the source of Revlon's own innovation. See Triumph Hosiery Mills, Inc. v. Triumph Internat'l Corp., supra 308 F.2d at 198. We agree with Judge Palmieri that it is probable that Revlon's "Cuti-Trim" has violated that standard.

■ Revlon also contends that Bassett should not be granted trademark protection because it "falsely designated the origin of goods and falsely described and represented said goods in connection with the trademark sought to be protected." See 15 U.S.C. § 1115(b) (3). This allegation centers around certain of Bassett's trade journal advertisements of the "Treasure Chest by Trim." The trial judge found that any advertising errors were unintentional and *de minimis* in effect and that there was no public deception by Bassett. We see no reason to disturb this finding.

■ Having established the likelihood of eventual success on the merits of its infringement suit, Bassett must also show that the denial of a preliminary injunction would cause it irreparable injury. See Foundry Services, Inc. v. Beneflux Corp., 206 F.2d 214 (2 Cir. 1953). Despite the plaintiff's relatively strong case on the merits, we think many of the equities lie with Revlon as to this issue of immediate and irreparable injury. Revlon will admittedly lose significant sums if it is compelled to withdraw existing inventories of "Cuti-Trim" from the market.[3] On the other hand, Bassett does not at this time make a cuticle trimmer, nor has it indicated a desire to do so in the near future. Of course, if there was a danger that further sales by Revlon would cause present confusion of the public, or would tarnish Bassett's reputation or its "Trim" mark, a complete preliminary injunction would be appropriate. See S. C. Johnson & Son, Inc. v. Johnson, 175 F.2d 176, 179–180 (2 Cir.), cert. denied, 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527 (1949). But, considering Revlon's established and independent good will in the manicure implement field, we find the likelihood of tarnishment slight. Moreover, since Bassett does not produce a cuticle trimmer, there is little likelihood of immediate confusion. Consequently, we find that the threatened irreparable injury to Bassett will not take place if Revlon is permitted merely to market its existing stocks of "Cuti-Trim." [4]

For these reasons, we modify the preliminary injunction to permit Revlon to market up to 80,000 existing cuticle trim-

3. Not only would Revlon have to destroy all the bubble packs and related display cards upon which the words "Cuti-Trim" appear, but substantial numbers of the cuticle trimmers themselves would have to be scrapped because "Revlon 'Cuti-Trim' U.S.A. 2070" is permanently embossed upon them. Revlon estimates that its total loss from these sources would exceed $50,000.

4. An indication that Bassett is more concerned with future damage to its family of "Trim" marks than with present injuries is the fact that Bassett did not file its motion for a preliminary injunction until 2½ months after the complaint was filed. This is a further reason to modify the preliminary injunction. Cf. Polaroid Corp. v. Polarad Elec. Crop., 287 F.2d 492 (2 Cir.), cert. denied, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961).

mers and bubble pack displays that bear the mark "Cuti-Trim." [5] However, Revlon is enjoined *pendente lite* from any other use of "Cuti-Trim" or any mark similar to the plaintiff's trademark "Trim" in the advertising or sale of manicuring implements or goods of the same general class. Revlon is also enjoined from undertaking any additional consumer advertising of the "Cuti-Trim" mark.

Order affirmed, as modified, with no costs.

5. On November 19, 1965, the date of Judge Palmieri's order, Revlon averred that it had 80,000 fully assembled, unsold cuticle trimmers bearing the "Cuti-Trim" legend. To prevent Revlon from profiting by any possible inventory build-up during the period of the stay granted by this court, we limit our modification to permit the marketing of only 80,000 additional "Cuti-Trim" implements.