**The DIFFERENT DRUMMER, LTD.,**
**Plaintiff,**

**v.**

**TEXTRON INC., and the Marschalk Company, Inc., Defendants.**

**No. 69 Civ. 4672.**

United States District Court
S. D. New York.

Nov. 20, 1969.

Amster & Rothstein, New York City, for plaintiff; Jesse Rothstein, George Gottlieb, Daniel Ebenstein, New York City, of counsel.

Paul, Weiss, Goldberg, Rifkind, Wharton & Garrison, New York City, for defendant Textron Inc.; Jay H. Topkis, Joel Taylor, New York City, of counsel.

Coudert Brothers, New York City, for defendant The Marschalk Co., Inc.; Carleton G. Eldridge, Jr., Gordon T. King, New York City, of counsel.

EDWARD WEINFELD, District Judge.

This is a motion for a preliminary injunction to enjoin the defendants from using in any way the words "different drummer" in connection with the advertising, promotion and sale of its products—in this instance, men's cologne.

The plaintiff, founded in 1967 and incorporated in 1968, adopted for its corporate name The Different Drummer, Ltd. and for its trade-mark "THE DIFFERENT DRUMMER" from the well known passage in Henry Thoreau's *Walden*.[1] The mark is used by plaintiff in the retail sale of men's and women's clothing, shoes, jewelry and accessory articles, and was intended by plaintiff to appeal to the "general anti-establishment, young, folk-rock, free, loving, non-violent, peaceful, politically-active, youth movement." A certificate of registration for "THE DIFFERENT DRUMMER" was issued to plaintiff by the United States Patent Office on August 5, 1969 for products generally sold by it, but registration did not extend to cologne.

Plaintiff is a boutique, typical of many which today cater largely to the young

1. "Why should we be in such desperate haste to succeed, and in such desperate enterprises? If a man does not keep pace with his companions, perhaps it is because he hears a different drummer. Let him step to the music he hears, however measured or far away."

who affect new modes of dress. It was started at a second floor location on Lexington Avenue, New York City, met with success and expanded into two stores at the Lexington Avenue address; its retail sales now gross $1,300,000 annually. In addition to its retail business, plaintiff franchises and acts as purchasing agent for other stores which operate under the name "The Different Drummer." Two franchised stores have already opened, one in Pittsburgh and the other in Manhasset, and four others are under construction.

Plaintiff alleges that it has advertised in the usual media except television. However, its advertising program does not appear to have been extensive, nor has any information been submitted as to its scope. Plaintiff's corporate title and its style of business have been noticed by some trade papers, in scattered news and magazine articles, and on occasion by television networks. Plaintiff, however, asserts that its young, anti-establishment image is widespread, an image it purposely created and wishes to preserve. In some instances a news piece has contained references deemed favorable by plaintiff, such as "The feeling within the stores themselves is funky, off-beat and low-keyed."

The defendant Textron Inc., through its Speidel Division, is the manufacturer, and the defendant The Marschalk Company, Inc., the advertising agency, of BRAVURA, a men's cologne, part of a line of men's toiletries primarily designed for the youth market. The agency, early in 1969, in preparing television and radio material for an advertising campaign for BRAVURA cologne, decided that the central theme of its advertising should be geared to the youth market and reflect prevailing attitudes of today's young people. Marschalk, like plaintiff, found its youthful theme in Thoreau's famous passage quoted above. The agency used the copy line "The man who hears a different drummer drumming." It states the phrase was selected because it aptly connotes the independent thinking of today's youth and their questioning of the values of contemporary society. The copy line sentence is included textually in two radio commercials, one containing 108 words, the other, 115 words, and in a television commercial of fifty-four words, which respectively run for fifty, sixty and thirty seconds. The sixty second, 115 word radio script is typical:

What kind of man wears Bravura?

The man who hears a different drummer drumming.

The man who hears a different drummer drumming.

The man who can stand alone who has a mind of his own.

Who wears Bravura After Shave and Cologne.

The guy who never follows the crowd and never notices they are following him.

He's got his own style, his own likes.

One of them happens to be Bravura.

Why? It is something new, something unlike the others, and so is he.

The man who can stand alone who has a mind of his own.

Does your man hear a different drummer?

Give him Bravura and play along.

Bravura After Shave and Cologne

The defendants commenced the use of the scripts in May 1969 in market testing procedures. They are now using them in their principal radio and television advertising campaign for the Christmas season.

Plaintiff contends that such use is an effort to trade on the good will attaching to its trade-mark and trade name "THE DIFFERENT DRUMMER," which it asserts has acquired a secondary meaning identifying plaintiff as the source of goods sold under the mark. Plaintiff argues that BRAVURA cologne advertisements are intended to appeal to the same class of customers as that of plaintiff; that they are likely to cause confusion in the minds of the purchasing public as to the source of the product; that they will diminish the value of the mark and

adversely affect plaintiff's sales activities in its stores and franchised stores.

The complaint is in four counts and alleges: (1) infringement of plaintiff's federally registered trademark in violation of 15 U.S.C. section 1114; (2) false designation of the origin of goods in violation of 15 U.S.C. section 1125(a); (3) common law unfair competition; and (4) dilution of plaintiff's trade-mark and trade name under the New York General Business Law McKinney's Consol.Laws, c. 20, section 368-d.

The defendants in essence question the validity of the trade-mark and deny infringement, unfair competition or dilution of plaintiff's mark. Finally, they deny plaintiff's claim of irreparable injury.

The sole question at this juncture of the litigation is whether plaintiff is entitled to preliminary injunctive relief. To succeed plaintiff must make a clear showing (1) of probable success on a trial on the merits, and (2) of irreparable injury unless the injunction is granted.[2]

The Court is of the view that upon assessment of the significant factors[3] on the record as here presented, the drastic remedy of preliminary injunctive relief is not warranted. The case bristles with sharply disputed fact issues and substantial questions of law. Initially, there are the related questions whether plaintiff's claimed right in "THE DIFFERENT DRUMMER" is entitled to protection, and whether in fact the phrase has acquired a "secondary meaning" indicating plaintiff as the source of products to which it is attached.[4] The plaintiff in effect is asserting the exclusive right to use for commercial purposes Thoreau's famous phrase, which is part of our common literary heritage. Although the words "different drummer" are not descriptive in the ordinary sense of that term, and may even be considered "fanciful" or "suggestive," they are not the creation of the plaintiff, and their true source, Thoreau's *Walden,* is the property of all English-speaking peoples. In consequence, just as in the case of a descriptive trade-mark where the claim to the mark is weak and the orbit of protection less than that afforded a strong or arbitrary mark, the plaintiff would have a heavy burden upon a trial on the merits to sustain its claim to trade-mark protection.[5] While such protection is granted where common and generic terms through continuous use have come to identify the source of products, there has been no adequate showing here that plaintiff's trade-mark or name has acquired a secondary meaning.

Even assuming plaintiff has a valid trade-mark in Thoreau's phrase, there is a substantial question whether the defendants' textual use of the phrase in sentences that are part of extended radio and television commercials constitutes infringement or is likely to confuse and deceive the buying public as to the origin or source of the product. Further, the defendants' cologne bottles carry the names "BRAVURA" and "SPEIDEL,"

2. Clairol Inc. v. Gillette Co., 389 F.2d 264, 265 (2d Cir. 1968); W. E. Bassett Co. v. Revlon, Inc., 354 F.2d 868, 871–872 (2d Cir. 1966); Foundry Services, Inc. v. Beneflux Corp., 206 F.2d 214, 216 (2d Cir. 1953).

3. *Cf.* W. E. Bassett Co. v. Revlon, Inc., 354 F.2d 868, 871–872 (2d Cir. 1966); Triumph Hosiery Mills, Inc. v. Triumph International Corp., 308 F.2d 196, 200 (2d Cir. 1962).

4. W. E. Bassett Co. v. Revlon, Inc., 354 F.2d 868, 871 (2d Cir. 1966).

5. *See* Clairol Inc. v. Gillette Co., 389 F.2d 264, 269–270 (2d Cir. 1968); W. E. Bassett Co. v. Revlon, Inc., 354 F.2d 868, 871–872 (2d Cir. 1966); Triumph Hosiery Mills, Inc. v. Triumph International Corp., 308 F.2d 196, 200 (2d Cir. 1962); Safeway Stores, Inc. v. Safeway Properties, Inc., 307 F.2d 495, 499 (2d Cir. 1962); Societe Comptoir De L'Industrie Cotonniere Etablissements Boussac v. Alexander's Dept. Stores, Inc., 299 F.2d 33, 36, 1 A.L.R.3d 752 (2d Cir. 1962).

which clearly identify their origin.[6] Since plaintiff has in the past sold only an insubstantial amount of cologne and apparently has no present intention of expanding into the field of men's toiletries, the possibility of public confusion with respect to BRAVURA's source is even more unlikely.[7] It is significant that not a single affidavit has been submitted of any instance of confusion on the part of any purchaser as to the origin of the cologne.[8] In sum, the likelihood of probable success has not been clearly shown.

A further obstacle to preliminary injunctive relief is plaintiff's failure to make a clear showing of irreparable injury. The most persuasive evidence repelling any claim of irreparable injury, oddly enough, comes from the plaintiff itself. In May 1969 the parties had discussions, the details of which are in dispute, with respect to a joint commercial promotional campaign for products respectively sold by them. But whatever the facts as to the abortive May meeting, there is no dispute as to events in September 1969. Plaintiff's attorneys then wrote to Speidel, claiming that its advertising programs for BRAVURA cologne and toiletries infringed upon plaintiff's rights in the mark "THE DIFFERENT DRUMMER," a claim which was forthwith rejected by Speidel. In the very letter in which plaintiff's attorneys were asserting the infringement claim on plaintiff's behalf, they also stated that plaintiff " * * * would be willing to consider some reasonable business proposal to allow you to use its name * * " and assured the defendants that their client would " * * * be reasonable in considering proposals which may be made by Speidel."[9] This proposal makes it abundantly clear that plaintiff's claim of irreparable injury is specious. It is recognition that money damages would be adequate compensation for any loss that may be sustained, and that such damages would be calculable.[10] And the suggested proposal further dispels any claim of tarnishment or dilution unless it be urged that plaintiff is willing to sell its asserted trade-mark rights for a mess of pottage. In any event, there has not been the requisite showing "that unless an injunction is granted, the plaintiff will suffer harm which cannot be repaired."[11]

And, entirely apart from a lack of showing of irreparable injury, the equities preponderate in favor of the defendants. They have spent over a million dollars in connection with the market testing of their radio and television commercials, purchase of radio and television time, sales meetings and production of special rock phonograph records. If defendants were now enjoined, it would be

6. Even assuming plaintiff's corporate name has achieved trade-mark status, plaintiff "may only restrain the trade-mark use of the term by the defendant, that is, the use of the term as a symbol to attract public attention." Safeway Stores, Inc. v. Safeway Properties, Inc., 307 F.2d 495, 499 (2d Cir. 1962). *See also* Clairol Inc. v. Gillette Co., 389 F.2d 264, 269 (2d Cir. 1968).

7. *Cf.* G. B. Kent & Sons, Ltd. v. P. Lorillard Co., 114 F.Supp. 621, 630 (S.D.N.Y.1953), *aff'd on opinion below*, 210 F.2d 953 (2d Cir. 1954). The Court, of course, recognizes that direct competition between the parties is not necessary to obtain injunctive relief, but other elements, here found lacking, must be shown. *See* Safeway Stores, Inc. v. Safeway Properties, Inc., 307 F.2d 495, 499 (2d Cir. 1962); S. C. Johnson & Son,

Inc. v. Johnson, 175 F.2d 176, 179–180 (2d Cir.), *cert. denied*, 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527 (1949).

8. G. B. Kent & Sons, Ltd. v. P. Lorillard Co., 114 F.Supp. 621, 627 (S.D.N.Y. 1953), *aff'd on opinion below*, 210 F.2d 953 (2d Cir. 1954).

9. Plaintiff's objection to the use of this letter is unfounded. The letter speaks for itself; it contained a demand that defendants desist from alleged infringing activities coupled with a unilateral invitation by plaintiff to submit a licensing proposal. It was not, as plaintiff now suggests, an offer made during the course of settlement negotiations.

10. *Cf.* Foundry Services, Inc. v. Beneflux Corp., 206 F.2d 214, 216 (2d Cir. 1953).

11. Studebaker Corp. v. Gittlin, 360 F.2d 692, 698 (2d Cir. 1966).

much too late for them to develop another advertising campaign for this Christmas season.

Upon all the facts here presented, plaintiff has failed to make the necessary showing entitling it to preliminary injunctive relief, and accordingly the motion is denied.