**CERRUTI, INC., Plaintiff-Appellant,**

**v.**

**McCRORY CORPORATION, Lanificio F.LLI Cerruti S.A.S. and Antonio Cerruti, Defendants-Appellees.**

**No. 371, Docket 35366.**

United States Court of Appeals, Second Circuit.

Argued Jan. 12, 1971.

Decided Feb. 8, 1971.

Robert R. Keegan, New York City (Egon E. Berg, Darby & Darby, New York City, of counsel), for plaintiff-appellant.

Gerald W. Griffen, New York City (R. Bradlee Boal, Cooper, Dunham, Hen-

ninger & Clark, New York City, of counsel), for defendants-appellees.

Before WATERMAN, FRIENDLY and KAUFMAN, Circuit Judges.

FRIENDLY, Circuit Judge:

Cerruti Incorporated brought this action for trademark and trade name infringement and unfair competition in the District Court for the Southern District of New York. The complaint named as defendant McCrory Corporation, whose Best & Co. Division had recently opened a "Cerruti 1881" boutique in the men's department of its Fifth Avenue store in New York City, just a few blocks away from Cerruti Incorporated's retail store on East 54th Street. This boutique stocked men's apparel and accessories sold to Best by a well-known Italian firm established in 1881, Lanificio Fratelli Cerruti S.A.S. Many of these products were designed by a contemporary scion of the family and the company's president, Antonio ("Nino") Cerruti. Both the company and Nino were joined as defendants in an amended complaint, the defendants answered and counterclaimed, and plaintiff replied. Plaintiff sought an injunction *pendente lite* against defendants' use of the words Cerruti or Cerruti 1881 in connection with the sale of ties, scarves, shirts, handkerchiefs, sweaters, belts, socks, robes and jewelry, in any advertising, or in any other manner which "may reasonably have the effect of injuring plaintiff's business reputation or of diluting plaintiff's trade names and trademarks." Extensive affidavits were submitted. Judge Motley denied the motion for a preliminary injunction on the grounds that plaintiff had not sustained its burden of showing either probability of success at trial or irreparable injury *pendente lite*, and plaintiff appeals.[1]

Until the middle 1960's the business of Lanificio Cerruti was the manufacture and sale of clothing fabrics, admittedly of high quality.[2] In 1934 it began exporting these to the United States for the fabrication of custom tailored and ready-to-wear suits and coats. The shipping containers and the cloth bales for bolts of fabric were allegedly marked with the Cerruti name and the trademark Cerruti 1881 from the outset. Later, plaintiff says much later, Lanificio Cerruti affixed string tags to the bolts, imprinted its name upon the piece goods, and distributed labels for tailors to sew into the finished garments.

The plaintiff, Cerruti Incorporated, was organized in New Jersey in October 1945.[3] After some two years of operation in that state, it moved its headquarters to New York City and has continuously had an office and showroom there. Initially it designed and sold silk fabrics for ties, robes, scarves, handkerchiefs and shirts; cotton fabrics for shirts; woolen fabrics for ties and scarves; and rayon acetate fabrics for

---

1. In light of the fact that we have frequently had occasion to admonish counsel for failure to comply with the provisions of FRAP 30(b) and (e) with respect to the submission of a joint appendix and exhibits, it is a pleasure to record how faithfully counsel on this appeal have complied with them, and also to note how greatly the joint appendix system has lightened our labors in this and other cases where the Rule has been followed.

2. Plaintiff claims that the business of Lanificio Cerruti at this time was limited, as its name might suggest, to woolen textiles; defendant refers to its trade more generally as the manufacture and sale of clothing fabric. We express no opinion about this. Indeed, we wish to make clear that our statement of the case, which does not recite each thrust and counterthrust as presented in the pleadings, affidavits, or briefs, is not meant to dispose of any disputed issue of fact or even to imply that factual contentions which presently appear uncontroverted may not ultimately be challenged after the full development of the facts that a trial should provide.

3. It was incorporated as "Q. Cerruti & Son," Q. Cerruti being the father of the present president, Leo E. Cerruti; the name was changed in 1946.

ties, scarves and shirts. Apparently Cerruti, Inc. did not then cause its name to be generally made known beyond the immediate purchaser, although its president alleged that it commenced selling some finished clothing items, particularly neckwear, around 1947. However, at various later times, the precise dates of which are in dispute, it began to sell various retail items, at first ties, shirts, scarves, handkerchiefs, robes, cologne and soap, later also belts, jewelry, (cuff links), footwear, travel cases, wallets, umbrellas, leather goods and canes. Many, perhaps most, of these items were not manufactured by plaintiff, and the precise extent to which it applied its name to them is unclear. In 1965 it adopted the trade name Cerruti CXIII. About December 1966 it began using this as a trademark on ties, scarves, shirts, handkerchiefs and sweaters, and received a United States trademark registration for such use in July 1968. Meanwhile Lanificio Cerruti, on August 8, 1967, had received such a registration for Fratelli Cerruti 1881 for coverlets and tablecovers, and fabrics to be used in making dresses, overcoats, jackets and raincoats, and for 1881 Fratelli Cerruti, with a design, for clothing fabrics.

In addition to supplying stores of high reputation with items under its trade name or trademark, plaintiff has operated a New York City retail store since 1955. Originally the store was operated under the name of the French manufacturer of men's neckwear and other items, Charvet et Fils, although allegedly some of the ties, shirts, scarves, handkerchiefs and sweaters were sold under the Cerruti name. In 1968 the name of the store was changed to Cerruti CXIII, and the Charvet et Fils business was moved next door.

The parties might have remained in a state of peaceful coexistence with Lanificio Cerruti using the name for clothing fabrics and such of their products as suits, overcoats, jackets, etc., as were finished in the United States, and Cerruti Incorporated its name for ties, shirts, etc., and the fabrics used in making them, if Lanificio Cerruti had not decided to broaden its product line, first in Europe and, beginning in 1967, in the United States. In that year it commenced the sale, under its trademark, of finished suits and coats in this country; in 1968 it added ties, sweaters, jackets, slacks, scarves, handkerchiefs and other men's apparel and accessories. Its sales, also to American stores of the highest reputation, were stimulated by the opening in 1967 of the Cerruti 1881 boutique on the Rue Royale in Paris, the resulting réclame, and the Tiberio D'Oro award made in Capri in 1969, to Nino Cerruti as the "most outstanding men's fashion designer in the world." It was this that prompted Best's decision to install a Cerruti 1881 boutique—which was intended "to reproduce as closely as possible the Cerruti Paris boutique"—in its Fifth Avenue store.

The case bristles with difficult questions of trademark law. Were Lanificio Cerruti's American sales of woolen fabrics before World War II of such a nature as to entitle it to prevent another's use of the name on items such as ties and shirts, under the principle recognized in Aunt Jemima Mills Co. v. Rigney & Co., 247 F. 407 (2 Cir. 1917), cert. denied, 245 U.S. 672, 38 S.Ct. 222, 62 L.Ed. 540 (1918), and its numerous progeny, of which it suffices here to cite S. C. Johnson & Son, Inc. v. Johnson, 175 F.2d 176, 179–180 (2 Cir.), cert. denied, 338 U.S. 860, 70 S.Ct. 103, 94 L. Ed. 527 (1949) and Triumph Hosiery Mills, Inc. v. Triumph Int'l Corp., 308 F.2d 196, 198 (2 Cir. 1962)? If not, were the activities of Cerruti Incorporated, before Lanificio Cerruti's entry into the American market for accessories, such as to entitle it to prevent the latter's use of the name on such items? If the first question is answered in the affirmative, were Lanificio Cerruti's rights lost by its long failure to take any action to prevent plaintiff's use of the Cerruti name on such accessories? Cf. Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492, 498 (2 Cir.), cert. denied, 368 U.S. 820, 82 S.Ct. 36, 7 L.

Ed.2d 25 (1961); Chandon Champagne Corp. v. San Marino Wine Corp., 335 F. 2d 531, 535–536 (2 Cir. 1964). If Lanificio Cerruti was thus guilty of laches, would this not merely spread a cloak of protection over Cerruti Incorporated's use of the name on accessories but entitle the latter to prevent Lanificio Cerruti from moving into the field it had allowed the American company to occupy? To what extent are the answers to any or all these questions affected··by the fact that the trademarks and trade names here at issue are the parties' own? See, e. g., S. C. Johnson & Son, Inc. v. Johnson, 116 F.2d 427 (2 Cir. 1940), and the full discussion in 3 Callmann, The Law of Unfair Competition, Trademarks and Monopolies § 85.2 (3d ed. 1969). How much did either party know of what the other was doing, and to what extent does that affect decision?

These are real questions, not rhetorical ones. We propound them not to intimate any opinion on the correct answers but rather to indicate that this case involves serious issues which should not be determined, even preliminarily, on an incomplete factual showing by way of affidavits, see S.E.C. v. Frank, 388 F.2d 486 (2 Cir. 1968), in the absence of clear proof of necessity for interlocutory injunctive relief. Plaintiff's case for this rested primarily on the opening of the Cerruti 1881 boutique in the Best & Co. store only a short distance from its retail establishment.[4] However that point may have stood when the case was decided by the district judge, the record has been enlarged, with the consent of both parties, to show that the Best store has now been permanently closed. When we inquired at the argument what irreparable injury there was under these circumstances, plaintiff's counsel advanced the possibility that Lanificio Cerruti might at any time engage in a large-scale program for licensing the use of its name. We should not suppose the pros-

pect of that to be very great when almost anyone essaying such a role would know he would probably be buying a seat at the defendants' table in this or some other lawsuit. If plaintiff's forebodings should nevertheless be realized, it would be free to renew its motion in the light of this opinion, as it may also do if, as it fears, the defendant should drag its feet with respect to pretrial discovery. What is badly needed is the determination of factual issues that only a trial can afford—unless a resumption of the negotiations the parties had been conducting might lead to a resolution of a different sort. On this limited basis, and without indicating any opinion on the views expressed by the district judge with respect to the merits, we affirm the denial of interlocutory relief. Cf. Arco Fuel Oil Co. v. Atlantic Richfield Co., 427 F.2d 517 (2 Cir. 1970).

Affirmed.

---

4. While plaintiff also relied on sales by Lanificio Cerruti to other shops, its own exhibits showed that sales to three of the most prestigious (Bergdorf Goodman, Neiman-Marcus, and I. Magnin) had been discontinued for the time being.