**LE CORDON BLEU S.a.r.l., Plaintiff,**

v.

**BPC PUBLISHING LIMITED, Purnell Cookery and Manhattan News Co., Inc., Defendants.**

**No. 71 Civil 1936.**

United States District Court,
S. D. New York.

May 25, 1971.

Lloyd I. Isler, New York City, for plaintiff.

Paul, Weiss, Goldberg, Rifkind, Wharton & Garrison, New York City, for defendants, Joseph J. Ackell, Gary N. Jacobs, New York City, of counsel.

EDWARD WEINFELD, District Judge.

Plaintiff seeks a preliminary injunction to enjoin the defendants[1] from distributing or advertising a magazine entitled "Grand Diplome Cooking Course" and from infringing the trademark and trade name "Le Cordon Bleu."[2] The cover sheet of the magazine bears the title "Grand Diplome Cooking Course" in one-inch bold type and above it in quarter-inch type is a byline, "Week by Week Learn to Cook the International Cordon Bleu Way." The magazine, referred to as a "partwork,"[3] is to be issued weekly for a period of seventy-two weeks, the first number of which was distributed March 2, 1971. It is sold throughout the northeastern United States and Canada, principally by supermarkets and on newsstands, and is designed for use by housewives. To date, there have been eleven issues and each has sold more than fifty thousand copies.

Plaintiff, since 1895, has operated a cooking school in Paris, France, under the name of "l'Ecole du Cordon Bleu," also known as "Le Cordon Bleu," to train students to become professional chefs and cooks, and also for those interested in the art of cooking for purely personal and domestic enjoyment. In conjunction with the operation of its school (hereafter the Paris school), plaintiff published a magazine entitled "Le Cordon Bleu," which was edited by renowned chefs on its teaching staff. Through the years it has granted to its students various diplomas, depending upon the courses pursued and the period of classroom attendance. To those students who completed a full course, which required regular class attendance and practical work sessions, and who satisfactorily passed examinations, a "Grand Diplome" was granted, which plaintiff asserts carries with it public recognition of the recipient's skill in the art of French cooking. Plaintiff contends that

---

1. The three defendants have different roles in connection with the publication, issuance and distribution of the magazine. Defendant BPC Limited is a limited company organized under the laws of the United Kingdom which in 1970 formed a California corporation, Purnell, Incorporated. Purnell, Incorporated is the sole general partner of defendant Purnell Cookery, a limited partnership which is the publisher of the magazine. Defendant Manhattan News Co., Inc. distributes the magazine in New York City. The defendants are referred to herein collectively.

2. The underlying complaint seeks a permanent injunction, destruction of existing magazines, an accounting, and damages, based upon claims of unfair competition, false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a), violation of New York's anti-dilution statute, N.Y. General Business Law, McKinney's Consol.Laws c. 20, § 368–d, and intentional infliction of injury.

3. A "partwork" is a term used in the publishing business to denote the serialization of an entire work.

the trade name "Cordon Bleu" has been publicly identified with it and the Paris school as the source for distinctive and superior cooking instructions, methods and recipes.

In 1965 plaintiff registered the trade-mark and trade name "Le Cordon Bleu" with the United States Patent Office in connection with periodicals, magazines, schools and educational services. In 1969 one of plaintiff's Grand Diplome graduates was designated as its United States representative, and he initiated a program of Cordon Bleu school demonstration classes in the United States. Since September 1969 such classes were conducted in New York City, Cleveland, Detroit and Baltimore, and other classes are scheduled for other cities.

In 1968–69 the defendant BPC Publishing Limited had successfully published and distributed a seventy-two weekly partwork entitled "Cordon Bleu Cookery Course" in England, Canada, Australia, New Zealand and parts of South Africa, and in all had sold thirteen million copies of the course. The publication under that name was pursuant to an agreement with and under the sponsorship of the Cordon Bleu Cookery School of London, England. The London school was founded under the name "Au Petit Cordon Bleu" forty years ago by Rosemary Hume and Dione Lucas, both Grand Diplome graduates of the Paris school, and after World War II it was operated under its present name "Cordon Bleu Cookery School" (hereafter the London school). The defendants, based upon an affidavit by Miss Hume, assert that the London school received permission for the use of the name from one of the principals of the Paris school. The courses at the London school are designed for the nonprofessional cook: the housewife, the husband, the bachelor or the domestic servant. It is also alleged that the London school has achieved an international reputation for its teaching of the Cordon Bleu method of cooking, which, according to Miss Hume, stresses the economy of time and materials, has been developed by her own refinements of method and technique, is not unique to the Paris school, and is not limited to the French style of cooking. The London school also operated a restaurant known as "Au Petit Cordon Bleu." Miss Lucas, one of the co-founders, came to the United States, where in 1947 she authored "The Cordon Bleu Cook Book," published and distributed throughout the United States by Little, Brown and Company; she also conducted in New York City a Cordon Bleu cooking school and restaurant. The seventy-two issues of the "Cordon Bleu Cookery Course" distributed in 1968–69 in various Commonwealth countries and South Africa, as already noted, were under the sponsorship of the London school, and its name, methods and recipes were used in all issues pursuant to an agreement between it and the defendant BPC.

The success of the United Kingdom venture led the defendants to consider publication of a similar cooking course publication in the United States or, as it has been termed, an "Americanized version." The defendants deemed that an American publication entitled "Cordon Bleu Cookery Course" would fare better commercially as a fully European version under the sponsorship of both the London and the Paris schools. Accordingly, they were prepared to pay royalties for the endorsement by the Paris school and the use of its trademark (the defendants already had an agreement with the London school). Negotiations initially were commenced early in 1970 in Paris with representatives of plaintiff, but later were carried on in this country by its designated business representative. After extensive negotiations and proposals and counter proposals, the parties failed to reach an agreement. A principal point of difference, although not the sole one, related to amounts and percentages to be paid to the Paris school under a royalty arrangement. On July 8, 1970, the defendants notified plaintiff's representative that since they had failed to consummate an agreement, they proposed to "launch our Cookery Course in the USA

under some other name"—that is, other than "Cordon Bleu Cookery Course." Early in February 1971, the defendants advertised in the New York magazine that they planned publication of a part-work under the title "Grand Diplome Cooking Course," and that the first issue would go on sale on March 2. The advertisement carried a front cover picture with the name "Grand Diplome Cooking Course," and above, in smaller type, the legend, "Week by Week Learn to Cook the International Cordon Bleu Way." The first number was issued as advertised on March 2 and successive issues published and distributed weekly thereafter, all bearing the title and legend as they appeared on the cover of the original issue.

Plaintiff commenced this action on April 26. In substance, in seeking to enjoin the defendants' publication, it asserts that the title, the byline, the text and pictures in each issue convey the idea that the magazine originates with and is the product of the plaintiff and its school; also, that those who purchase the seventy-two issues will receive an education and training in French cooking equivalent to that received by students at plaintiff's school who there complete the courses leading to the Grand Diplome. The defendants, in opposing, contend in substance that Cordon Bleu is a generic term and that its use is descriptive, deny the term has acquired a secondary meaning with respect to the Paris school, and allege consent to its use by the London school. The moving and opposing affidavits refer extensively to these and other matters bearing on the respective contentions, which need not be detailed here.

Plaintiff, on its motion for the drastic remedy of preliminary injunctive relief, which if granted would interrupt publication of defendants' weekly partwork under its existing title, of which eleven issues have already been distributed, with a number of others in advanced stages of preparation for future distribution, bears a heavy burden. While there is more merit to plaintiff's basic claim than the defendants appear to recognize,[4] the application must be denied for a number of reasons.

1. Plaintiff's contention that "Cordon Bleu" and "Grand Diplome", either singly or in combination, have acquired a secondary meaning with reference to plaintiff's cooking school in Paris, culinary publications and related items, rests upon hearsay allegations. The affidavit of plaintiff's "business representative" is inadequate. No evidential support has been submitted to substantiate plaintiff's basic claim. It has not offered an affidavit of any of its directors or principals, or any hotelier, restauranteur, chef or other persons who may be presumed to have knowledge of the facts. In the light of defendants' challenge to plaintiff's claim of secondary meaning, evidential matter must be offered before the court would be justified in granting drastic preliminary injunctive relief.[5]

2. Although the defendants announced early in February their purpose to sell and distribute the partwork under the title "Grand Diplome Cooking Course" and its first number was distributed on March 2 and weekly thereafter, plaintiff took no action until it filed this suit on April 26, 1971, almost thirteen weeks after the defendants' initial

---

4. *See* Stix Prods. Inc. v. United Merchants & Mfrs., Inc., 273 F.Supp. 250 (S.D.N.Y.1967), 295 F.Supp. 479 (S.D. N.Y.1968) ; Atlantic Monthly Co. v. Frederick Ungar Pub. Co., 185 F.Supp. 221 (S.D.N.Y.1960), 197 F.Supp. 524 (S.D.N.Y.1961), where permanent injunctions were granted after trial, although preliminary injunctive relief had been denied. *See also* G. H. Mumm Champagne v. Eastern Wine Corp., 142 F.2d 499 (2d Cir.), *cert. denied*, 323 U.S. 715, 65 S.Ct. 41, 89 L.Ed. 575 (1944).

5. *Cf.* Cerruti, Inc. v. McCrory Corp., 438 F.2d 281 (2d Cir. 1971); Arco Fuel Oil Co. v. Atlantic Richfield Co., 427 F.2d 517 (2d Cir. 1970) ; Franke v. Wiltschek, 109 F.Supp. 841 (S.D.N.Y.1953).

announcement and eight weeks after the appearance of the first issue. In the meantime, defendants expended for magazine, newspaper, radio and television advertising and initial production costs in excess of $1,125,000.[6] A party who contends alleged infringement of its trademark rights and that it is the victim of unfair competition must move expeditiously to enjoin the conduct which allegedly results in irreparable injury. There has been no adequate explanation for the substantial delay either in a demand upon the defendants that they desist from the alleged wrongful conduct or in bringing suit.[7]

3. The publication in 1968–69 of seventy-two issues of "Cordon Bleu Cookery Course" in conjunction with the London school, and widely distributed in the United Kingdom and Commonwealth countries, was never objected to by plaintiff. Thus, a substantial question is raised as to laches and acquiescence.[8] Another substantial question exists as to the scope of authority of the London school to authorize the use by defendants of its name in the United States.

4. It is debatable whether in totality the defendants' cover page and other material contained therein conveys, as plaintiff contends, a French aura suggesting sponsorship by and affiliation with the French school or, as defendant contends, the publication conveys to the average reader that its affiliation is exclusively with the London school. Thus, on the issue of likelihood of confusion, plaintiff has offered no proof that any purchaser of the magazine was confused or believed that the defendants' publication, of which by now more than 600,000 have been issued, originated with the plaintiff, the French school.[9]

5. That plaintiff was prepared to enter into an agreement with the defendants authorizing the use of its name in conjunction with the London school with respect to the publication even for a limited purpose under a royalty arrangement suggests that should plaintiff prevail upon a trial on the merits, damages

---

6. However, it should be noted that "financial power and its exercise serve as no excuse for infringing on the rights of others; and if a violation were found to exist, the circumstance that defendant had spent more than a million dollars in advertising its new product would not serve to protect it. Indeed, it would serve to aggravate the offense." G. B. Kent & Sons v. P. Lorillard Co., 114 F.Supp. 621, 627 (S.D.N.Y.1953), aff'd on opinion below, 210 F.2d 953 (2d Cir. 1954).

7. Cf. W. E. Bassett Co. v. Revlon, Inc., 354 F.2d 868, 872 n. 4 (2d Cir. 1966); Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492 (2d Cir.), cert. denied, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed. 2d 25 (1961); but see My-T Fine Corp. v. Samuels, 69 F.2d 76, 77–78 (2d Cir. 1934).

8. See Carl Zeiss Stiftung v. VEB Carl Zeiss Jena, 433 F.2d 686, 703–704 (2d Cir. 1970); Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492, 497–498 (2d Cir.), cert. denied, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961).

9. Cf. Venetianaire Corp. v. A & P Import Co., 429 F.2d 1079, 1082 (2d Cir. 1970); Miss Universe, Inc. v. Patricelli, 408 F.2d 506, 509 (2d Cir. 1969); Different Drummer, Ltd. v. Textron Inc., 306 F.Supp. 672, 674–675 (S.D.N.Y.1969); G. B. Kent & Sons v. P. Lorillard Co., 114 F. Supp. 621, 627–629, 630 (S.D.N.Y.1953), aff'd on opinion below, 210 F.2d 953 (2d Cir. 1954).

Plaintiff cites an instance of a magazine publisher who withdrew from a contemplated joint venture with plaintiff for the publication of books under plaintiff's trademark and trade name when the publisher learned of the defendants' magazine. That the prospective investor was no longer interested in the situation, which was fraught with the prospect of litigation which might defeat plaintiff's claim that its mark or name was unique or entitled to protection, is understandable, see Cerruti, Inc. v. McCrory Corp., 438 F.2d 281, 284 (2d Cir. 1971), but does not by itself establish confusion. The issue of confusion centers about the average ultimate consumer and not a sophisticated capital risk venturer, cf. Blisscraft of Hollywood v. United Plastics Co., 294 F.2d 694, 699 (2d Cir 1961); Stix Prods. Inc. v. United Merchants & Mfrs., Inc., 295 F.Supp. 479, 488 (S.D.N.Y.1968); Bayer Co. v. United Drug Co., 272 F. 505, 509 (S.D.N.Y. 1921).

are calculable.[10]  Moreover, the reservation, which was considered by the parties, as to the use of the name by plaintiff for items other than for the magazine seriously negates its claim of dilution.

The application presents too many issues of fact and substantial questions of law to warrant preliminary injunctive relief.  These issues should be probed in depth and resolved at a trial on the merits,[11] where demeanor evidence of witnesses on contested fact matters may be of significant importance.[12]

This disposition is no more than a denial of plaintiff's preliminary motion upon the papers as here presented.  The denial is without prejudice to an application by the plaintiff to the Chief Judge for a preference under the local rules of the court.

The foregoing constitutes an order.

10.  *Cf.* Different Drummer, Ltd. v. Textron Inc., 306 F.Supp. 672 (S.D.N.Y. 1969) ; *see also* Newman v. Holobeam, Inc., 319 F.Supp. 1389 (S.D.N.Y.1970).

11.  *Cf.* Cerruti, Inc. v. McCrory Corp., 438 F.2d 281, 284 (2d Cir. 1971) ; Arco Fuel Oil Co. v. Atlantic Richfield Co., 427 F.2d 517, 519 (2d Cir. 1970) ; Newman v. Holobeam, Inc., 319 F.Supp. 1389 (S.D.N.Y.1970) ; Franke v. Wiltschek, 109 F.Supp. 841 (S.D.N.Y.1953).

12.  Dyer v. MacDougall, 201 F.2d 265, 269 (2d Cir. 1952) ; Oil & Gas Ventures— First 1958 Fund, Ltd. v. Kung, 250 F. Supp. 744, 756 n. 48 (S.D.N.Y.1966).