863 F.2d 47
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Bruce Alan CURTIS, Plaintiff-Appellant,
v.
William STORY, Warden, et al., Defendants-Appellees.
 No. 87-5988.
 United States Court of Appeals, Sixth Circuit.
 Nov. 25, 1988.
 
 Before KEITH, NATHANIEL R. JONES and MILBURN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Plaintiff Bruce Alan Curtis was a prisoner at the Federal Correctional Institution, Ashland, Kentucky ("FCI Ashland"), until June 16, 1987. Under the doctrine announced in Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), plaintiff brought, on March 10, 1987, a pro se civil rights action against defendants, William Story, the FCI Ashland warden, and other named prison officials.[1] On June 4, 1987, plaintiff filed a motion for prohibitive injunction, seeking to stay his proposed transfer from FCI Ashland to FCI Phoenix, Arizona ("FCI Phoenix"). Plaintiff sought a decision on the merits of his Bivens action prior to his transfer. Plaintiff argued that defendants' purpose in transferring him was to impede the prosecution of his Bivens action. On June 16, 1987, plaintiff was transferred to FCI Phoenix.
 
 
 2
 Plaintiff's motion for prohibitive injunction was denied by the district court on August 7, 1987. In this appeal, plaintiff attacks the district court's judgment on several grounds, including the failure of the district court to conduct an evidentiary hearing prior to denying his motion for prohibitive injunction. Because the affidavits, pleadings and briefs present disputed issues of fact, we REVERSE and REMAND this case to the district court for an evidentiary hearing.
 
 
 3
 Plaintiff's motion for prohibitive injunction was initially referred to a magistrate. On June 22, 1987, defendants filed a response to plaintiff's motion. The response was supported by affidavits stating that plaintiff's transfer was requested and voluntary. Defendants denied any allegations of retaliation. See Response to Plaintiff's Motion for Prohibitive Injunction, Joint Appendix at 80, 84 [hereinafter Defendants' Response, JA]. On July 28, 1987, plaintiff issued a response stating that his transfer was involuntary and retaliatory. Plaintiff explained that as early as April 1987, he had refused transfer. Plaintiff then contended that his transfer to FCI Phoenix was initiated in retaliation for his legal activities against the defendants. See Plaintiff's Traverse to Defendant's Response of Plaintiff's Motion for Prohibitive Injunction, JA at 94-95 [hereinafter Plaintiff's Traverse].
 
 
 4
 On June 29, 1987, the magistrate found that plaintiff's transfer from FCI Ashland to FCI Phoenix was requested by plaintiff and recommended denial of his motion for prohibitive injunction. See Magistrate's Report and Recommendation, JA at 91-92. The district court reviewed the affidavits, pleadings and the magistrate's findings. Without conducting an evidentiary hearing, the district court denied plaintiff's motion for a prohibitive injunction. See Order, JA at 109-10.
 
 
 5
 Generally, an evidentiary hearing is required before an injunction may be granted. See United States v. McGee, 714 F.2d 607, 613 (6th Cir.1983); Medeco Security Locks, Inc. v. Swiderek, 680 F.2d 37, 38 (7th Cir.1981); Fed.R.Civ.P. 52, 65. When the parties' briefs and affidavits present disputed issues of fact, an evidentiary hearing is required to determine credibility issues. See SEC v. Spectrum, Ltd., 489 F.2d 535, 540-41 (2d Cir.1973); Cerruti, Inc. v. McCrory Corp., 438 F.2d 281, 284 (2d Cir.1971). Such a hearing implies the right to be heard on the disputed facts, as well as upon the law. Detroit & Toledo Shore Line R.R. Co. v. Brotherhood of Locomotive Firemen & Enginemen, 357 F.2d 152, 154 (6th Cir.1966). In Dopp v. Franklin Nat'l Bank, 461 F.2d 873, 879 (2d Cir.1972), the Second Circuit explained that:
 
 
 6
 [A] judge should not resolve a factual dispute on affidavits or depositions, for then he is merely showing a preference for "one piece of paper to another." Sims v. Greene, 161 F.2d 87, 88 (3d Cir.1947). This is particularly so when the judge without holding an evidentiary hearing, resolves the bitterly disputed facts in favor of the party who has the burden of establishing his right to preliminary relief. See id.; 7 Moore, Federal Practice Sec. 65.04. This caveat is most compelling "where everything turns on what happened and that is in sharp dispute; in such instances, the inappropriateness of proceeding on affidavits attains its maximum ..." Securities and Exchange Comm'n v. Frank, 388 F.2d 486, 491 (2d [sic] 1968) (Friendly, C.J.).
 
 
 7
 Dopp, 461 F.2d at 879.
 
 
 8
 In Forts v. Ward, 566 F.2d 849 (2d Cir.1977), the Second Circuit considered the claims of female prisoners seeking a preliminary injunction to enjoin the assignment of male guards to female housing units. The female prisoners argued that their nude bodies were "involuntarily exposed" to male guards in deprivation of their privacy rights. See id. at 851. Prison officials claimed that by using privacy curtains and screens, the female prisoners had the means to avoid the alleged deprivations and that the exposures were voluntary. See id. at 853. Due to this "voluntariness" question and other disputed issues of fact, the Second Circuit directed the district court to conduct an evidentiary hearing on the female prisoners' preliminary injunction motion. The Court concluded that "[r]esolution of the factual questions, most of which present credibility issues, with the benefit of cross-examination and the opportunity to observe the witnesses' demeanor on the stand, is essential." Id. at 854.
 
 
 9
 As in Fort, the need for an evidentiary hearing in the present case is established by briefs and affidavits which present disputed issues of fact. The main issue concerns whether plaintiff's transfer from FCI Ashland to FCI Phoenix was voluntary. Plaintiff argues that he was involuntarily transferred from FCI Ashland, a lower-level security institution, to FCI Phoenix, a higher-level security institution, in retaliation for exercising his constitutional rights. Plaintiff next contends that his transfer and consequent loss of privileges were punitive measures taken by prison officials opposed to his pro se Bivens action; his activities as his own jailhouse lawyer; and his activities as jailhouse lawyer to other inmates. See Plaintiff's Traverse, JA at 94-97. To rebut plaintiff's contentions, defendants argue that his transfer was voluntary and that on February 19, 1987, plaintiff requested relocation to a prison nearer his California home. See Defendants' Response, JA at 80, 83. Plaintiff answers that his February 19, 1987 request for transfer to a lower-level security prison closer to California was denied by the Bureau of Prisons on April 16, 1987. Plaintiff continues that immediately after the denial of his February transfer request, he told defendants McConnell and Wiggins that he would prefer to remain at FCI Ashland. See Plaintiff's Traverse, JA at 94, 95-96. Plaintiff then states that he wrote a letter to Max Weger, Regional Designator of the Bureau of Prisons. In the letter to Weger, plaintiff refused his transfer to FCI Phoenix, and argued that the transfer was in retaliation for his Bivens action. See Letter from Bruce A. Curtis to Max Weger, JA at 104-105 [hereinafter Curtis Letter]. Although Weger received plaintiff's letter on June 12, 1987, plaintiff was transferred from FCI Ashland on June 16, 1987. See id.; Defendant's Response, JA at 80, 83.
 
 
 10
 The magistrate determined that plaintiff had been transferred to FCI Phoenix at his own request. See Magistrate's Report and Recommendation, JA at 91. The district court adopted the Magistrate's Report and Recommendation, and determined that plaintiff's claims of involuntary, punitive and retaliatory transfer raised no disputed issues of fact requiring a hearing. See Order, JA at 109-110. We disagree. Our review of the parties' pleadings, affidavits and briefs reveals additional controverted issues which require further inquiry.[2]
 
 
 11
 In response to plaintiff's claim that his transfer to FCI Phoenix was punitive, defendants argue that the transfer was initiated to achieve "adjustment purposes." See Transfer Order, JA at 115. Plaintiff responds that he has remained incident report free for five years; completed the requirements for his college degree; participated in many prison social programs; and thus, has not demonstrated adjustment problems. See Curtis Letter, JA at 104. Defendants argue that plaintiff's transfer will provide him with new educational and social challenges. Memorandum from M.L. Lyons to Max Weger, JA at 90. Plaintiff contends that his transfer to FCI Phoenix was punitive and that, due to the higher level of security, he has suffered: (1) new and greater restrictions on his access to visitors; (2) new and greater restrictions on his access to mail; (3) a decreased chance of early parole; (4) decreased safety due to a greater number of violent inmates; (5) loss of his prison industry job and earned rank; and (6) loss of his ability to take depositions at FCI Ashland and to prosecute effectively his Bivens action. Thus, each allegation made by defendants to justify plaintiff's transfer on "adjustment" grounds is later disputed by plaintiff.
 
 
 12
 Additional disputed issues of fact stem from plaintiff's contention that he was transferred from FCI Ashland to FCI Phoenix in retaliation for his legal activities. We do not rule on the merits of plaintiff's underlying claim. We note, however, that a defendant prison official's retaliatory state of mind is seldom susceptible to proof by direct evidence that can be averred in a complaint. See McDonald v. Hall, 610 F.2d 16, 18 (1st Cir.1979). Moreover, claims involving proof of a defendant prison official's intent seldom lend themselves to summary disposition. See, e.g., Bridges v. Russell, 757 F.2d 1155 (11th Cir.1985) (holding that because a prisoner retains constitutional rights, a complaint that prison officials retaliated for the prisoner's exercise of personal first amendment rights states a claim); Garland v. Polley, 594 F.2d 1220 (8th Cir.1979) (holding that prisoner's claim that he was transferred to another prison in retaliation for filing civil rights complaint stated a cause of action). Thus, the significance and nature of the present plaintiff's claim that his transfer was unconstitutionally motivated supports our conclusion that an evidentiary hearing should have been conducted in this case.
 
 
 13
 Plaintiff argues that his allegation of retaliatory transfer is supported by the factual evidence of the chronology of events; defendants' interference in plaintiff's legal activities; and defendants' unconstitutional retaliation against plaintiff's legal activities. See Ferranti v. Moran, 618 F.2d 888 (1st Cir.1980); Buise v. Hudkins, 584 F.2d 223 (7th Cir.1978), cert. denied, 440 U.S. 916 (1979); Haymes v. Montanye, 547 F.2d 188 (2d Cir.1976), cert. denied, 431 U.S. 967 (1977). Plaintiff next argues that the "transfer was instituted for the sole reason of retaliation for plaintiff's legal activities against the defendants." Plaintiff's Traverse, JA at 94, 95. To counter plaintiff's contention that he suffered a retaliatory transfer due to his Bivens action and his legal activities on behalf of other inmates, defendants dispute the asserted fact that plaintiff acted as a jailhouse lawyer. On appeal, defendants argue that on January 23, 1987, plaintiff was administratively detained because he encouraged other inmates to engage in either a food strike or work stoppage to protest a new phone policy. See Brief of the Defendants-Appellees at 4, Curtis v. Story (No. 87-5988). Plaintiff answers that he only offered legal assistance and encouragement to other inmates who sought administrative relief from the phone policy. See Appellant's Reply to Brief of Appellees at 4. Plaintiff also states that prior to being placed in detention on October 11, 1986, he was told by defendants Holly and Moore that "we don't play that legal shit around here, if you want to help others you got to take the heat that goes with it." Appellant's Brief at 8. Defendants respond that on October 11, 1986, plaintiff was detained pending investigation of a marijuana possession charge, but all charges were later dismissed. See Brief of the Defendants-Appellees at 3-4. Thus, the alleged facts of plaintiff's activities as a jailhouse lawyer remain in controversy.
 
 
 14
 After giving full consideration to plaintiff's claim that he was transferred to a higher-level security prison in retaliation for his First Amendment activities, we find that the basic facts of this case and the inferences to be drawn from them are in dispute. We, therefore, hold that the district court erred in denying plaintiff's motion for prohibitive injunction without affording him an evidentiary hearing.
 
 
 15
 Due to plaintiff's substantial interest in the exercise of his First Amendment rights and defendants' continuing interest in safe and effective prison management, the district court should conduct an evidentiary hearing on plaintiff's prohibitive injunction motion.
 
 
 16
 Accordingly, this judgment is REVERSED and this case is REMANDED to the district court for further proceedings consistent with this opinion.
 
 
 
 [1]
 In addition to Warden William Story, plaintiff named the following defendants: George Wiggins, Associate Warden; John Oury, Executive Assistant to the Warden; Paul McConnell, L-Unit Manager; Don Holly, Investigating Lieutenant; Lt. Harbour, Investigating Lieutenant; and Ron Moore, L-Unit Counselor; all employees of FCI Ashland, in their individual and official capacities
 
 
 [2]
 We agree with the reasoning of the Second Circuit in Forts v. Ward, 566 F.2d 849, 852 n. 8 (2d Cir.1977):
 When a district court renders its decision without an evidentiary hearing, an appellate court is not limited to reviewing the district court's exercise of discretion. In the absence of a district court assessment of the credibility of witnesses, an appellate court is as well equipped as a district court to evaluate the parties' pleadings, affidavits and depositions [citations omitted].
 Id. See also SEC v. Coffey, 493 F.2d 1304, 1311 (6th Cir.1974), cert. denied, 420 U.S. 908 (1975).